EVELYN MCCARTHY et al., Respondents, v BRISTOL LABORA-
TORIES, DIVISION OF BRISTOL-MYERS COMPANY, et al.,
Appellants.

Second Department, April 19, 1982

APPEARANCES OF COUNSEL

*Richard L. Stern* (*Edward P. Carroll* of counsel), for
Bristol Laboratories, Division of Bristol-Myers Company,
appellant.

*Dewey, Ballantine, Bushby, Palmer & Wood* (*Thomas C.
Mazza* and *Sanford N. Berland* of counsel), for Eli Lilly and
Company, appellant.

*Barry, McTiernan & Moore* (*Richard J. Nealon* of coun-
sel), for respondents.

OPINION OF THE COURT

BROWN, J.

The facts underlying this action are undisputed. In Octo-
ber, 1971, while traveling through Pennsylvania, plaintiff
Evelyn McCarthy, then a New York resident, was stricken

with a kidney ailment and hospitalized at Montefiore Hospital in Pittsburgh. It is alleged that between October 24 and December 9, 1971, while she was hospitalized, Mrs. McCarthy was treated with two prescription drugs, Kantrex and Keflin. Kantrex is manufactured by defendant Bristol Laboratories[1] and Keflin is manufactured by defendant Eli Lilly and Company. It is alleged that as a result of the administration of these antibiotics, Mrs. McCarthy sustained personal injuries including blindness.

Plaintiffs commenced their action against defendants on October 23, 1975. Mrs. McCarthy sought recovery under four legal theories: (1) negligence, (2) breach of warranty, (3) negligence by reason of alleged statutory violations, and (4) strict liability. In a separate cause of action, plaintiff Florence McCarthy, Mrs. McCarthy's husband, sought damages for loss of services. By their bill of particulars, it was alleged that Mrs. McCarthy's injuries first manifested themselves on November 1, 1971.

Thereafter, defendants moved to dismiss the complaint and for summary judgment on the ground that the action was not timely brought within the limitation period prescribed by CPLR 214 (subd 5), which requires that actions to recover for personal injury be commenced within three years. Plaintiffs conceded that the causes of action based on negligence, statutory violations and strict liability were untimely and, accordingly, on June 2, 1976, Special Term dismissed said causes of action. It refused, however, to dismiss the cause of action that was based upon breach of warranty and the derivative action, holding that the four-year Statute of Limitations prescribed by section 2-725 of the Uniform Commercial Code was applicable thereto. The defendants thereupon appealed and this court affirmed (*McCarthy v Bristol Labs., Div. of Bristol-Myers Co.,* 61 AD2d 196).

Discovery proceedings were thereafter initiated. The facts developed during said proceedings disclosed that Montefiore Hospital had made no direct purchases of either Kantrex or Keflin from the defendants. Lilly's Keflin was sold to independent drug wholesalers and was then resold to Central Pharmacy, the drug marketing department of

---

1. Sued in this action as Bristol Laboratories, Division of Bristol-Myers Company.

University Health Center Hospitals, Inc., which in turn sold the antibiotics to Montefiore Hospital. The hospital's stock of Kantrex was also purchased through Central Pharmacy, which had purchased directly from Bristol Laboratories, the manufacturer. It became clear, therefore, that there existed no direct contract of sale between either of the plaintiffs and the defendant manufacturers, and plaintiffs do not on this appeal maintain otherwise.[2]

Accordingly, and based on the facts adduced through the discovery procedures which demonstrated that no contract for sale existed, Lilly moved for leave to renew its motion for summary judgment, and, upon the granting of such leave, for summary judgment on plaintiffs' remaining cause of action. Defendant Bristol cross-moved for similar relief on the same ground.

Plaintiffs did not controvert the contract for sale issue before Special Term but argued that: (a) defendants were attempting to relitigate the Statute of Limitations applicable to their breach of warranty claim which had already been determined by this court; and (b) in addition to the application of the procedural four-year New York statute, since the claim arose in Pennsylvania, the substantive law of that State, which permits an action in breach of warranty in the absence of privity, should be applied. Special Term concluded that plaintiffs were correct in their assertions that neither the absence of privity nor the Statute of Limitations were valid defenses. It is from this ruling that defendants appeal. We reverse.

Special Term improperly concluded that this court's determination upon the prior appeal stood for the proposition

---

2. We do not today reach the issue of whether there has been a sale of a drug by a hospital where the hospital furnishes medication to a patient, but note that the Third Department has held that as to individual defendant physicians, the furnishing of medication is an incidental feature of the services rendered and therefore there is no sale within the meaning of the Uniform Commercial Code so as to give rise to any express or implied warranties (*Osborn v Kelley*, 61 AD2d 367). See, also, *Perlmutter v Beth David Hosp.* (308 NY 100), holding that as to the furnishing of blood for a transfusion, such transaction "could not be characterized in part or in its underlying nature as one for the sale of goods, for [plaintiff] had checked into the hospital to restore her health, not to purchase blood." (*Milau Assoc. v North Ave. Dev. Corp.*, 42 NY2d 482, 486.)

that the defense of the Statute of Limitations as to plaintiffs' breach of warranty claim was not available to defendants. What we said was that the cause of action for personal injury arising from breach of warranty, to which the four-year Uniform Commercial Code Statute of Limitations would be applicable if a contract for sale was involved, could stand pending development of the factual issue of whether or not a "contract for sale" was involved (see Uniform Commercial Code, §§ 2-318, 2-725).[3] Mr. Justice HOPKINS, writing for this court, made it abundantly clear that a determination as to whether the four-year breach of warranty Statute of Limitations was applicable had not been made in view of the posture of the case at that time when he said:

"A second assumption which underlies the conclusion that the four-year time limit of the code applies as against the general time limit of the CPLR, is that a 'contract for sale' is here involved. This assumption is more debatable, because the complaint alleges merely that the defendants 'sold and distributed' the drugs * * * and that the plaintiff wife 'did take' the drugs. The affidavits of both sides submitted on the motion are not any more informative as to the facts * * * *On this state of the record, we believe that a sale of the drugs to the plaintiff wife may not be summarily ruled out.*

"[W]hether under the circumstances of this case, the plaintiff as a patient in a hospital receiving medication may be assimilated to the status of a remote user, or is a direct purchaser from the manufacturer or from the hospital, *are all issues which should not be determined on the bare pleadings.*" (61 AD2d 196, 200, 203; emphasis supplied.)

Clearly, a limitations defense was not foreclosed in the event that a contract of sale was not shown to exist.

In determining the limitations period applicable to the case at bar, we must look to New York law. CPLR 202 provides: "An action based upon a cause of action accruing

---

**3.** The warranty cause of action at bar arose prior to the September 1, 1975 amendment to section 2-318 of the Uniform Commercial Code, which altered that class of persons other than an original purchaser, to whom a seller's warranty, whether express or implied, may extend (L 1975, ch 774, § 1).

without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state *shall* apply." (Emphasis supplied.) Thus, where a cause of action accrues without the State but an action is commenced in New York, the New York "borrowing statute" requires the use of the shorter limitations period of either New York or the State of accrual. The exception to this rule is where the cause of action is in favor of a New York resident. The timeliness of an action brought in New York by a resident of the State upon a cause of action which accrued elsewhere is governed by the applicable New York Statute of Limitations and the New York "borrowing statute" is inapplicable (CPLR 202; *Alex v Grande,* 29 AD2d 616; see 1 Weinstein-Korn-Miller, NY Civ Prac, par 202.01; Siegel, New York Practice, 1979-1980 Supp, § 57, p 10).

In addition, for conflicts of law purposes, the question of how an action is to be characterized must be made in accordance with the laws of the forum State (Restatement, Conflict of Laws 2d, § 124, and comment thereto; Leflar, American Conflicts Law [3d ed], §§ 122, 127; see *Martin v Dierck Equip. Co.,* 43 NY2d 583, 589). As we are thus required to look to the law of New York for the purpose of correctly characterizing Mrs. McCarthy's claim, denominated as a breach of warranty cause of action, before determining the appropriate limitations period, an analysis of Pennsylvania substantive and statutory law is inappropriate and Special Term was in error in holding to the contrary.[4]

In determining the applicable Statute of Limitations, the gravamen or essence of the action is examined, not merely its nomenclature (*Western Elec. Co. v Brenner,* 41 NY2d 291, 293; *Brick v Cohn-Hall-Marx Co.,* 276 NY 259, 264; *Staffen v City of Rochester,* 80 AD2d 16, 18). Based upon

---

4. Even if we accepted and applied Pennsylvania substantive law with relation to the characterization of the action, a different result would not be reached. (See *Salvador v Atlantic Steel Boiler Co.,* 256 Pa Super Ct 330.)

the uncontroverted record now before us, it is clear that the second cause of action, while denominated in the complaint as one for breach of warranty, is in actuality one alleging strict products liability or negligence, the Statute of Limitations for which may be found in CPLR 214 (subd 5). Section 2-318 of the Uniform Commercial Code, as it existed at the time Mrs. McCarthy's cause of action accrued,[5] required privity between a plaintiff and a defendant in a breach of warranty action (see *Martin v Dierck Equip. Co., supra,* pp 589-590; cf. *Doulman v Sears, Roebuck & Co.,* 85 AD2d 707). As the injured plaintiff was not in privity with the defendant drug manufacturers, she possesses only a cause of action sounding in tort under either a negligence or strict products liability theory (*Martin v Dierck Equip. Co., supra,* pp 589-590; *Mack v Clairol, Inc.,* 69 AD2d 752). Her claim is therefore governed by the three-year Statute of Limitations period prescribed by CPLR 214 (subd 5) which began to run in 1971, at the time of injury (see *Thornton v Roosevelt Hosp.,* 47 NY2d 780, 781; *Victorson v Bock Laundry Mach. Co.,* 37 NY2d 395, 399-400; *Martin v Dierck Equip. Co., supra,* p 593 [dissenting opn explaining *Victorson*]; 1 Weinstein-Korn-Miller, NY Civ Prac, par 214.13). Since the cause of action under review was not interposed until 1975, it must be dismissed as time barred, and the derivative claim for the loss of services suffered by the plaintiff husband must fall as well. (*McCarthy v Bristol Labs., Div. of Bristol-Myers Co.,* 61 AD2d 196, 199, *supra.*)

Accordingly, the order of Special Term should be reversed and defendants' renewed motions to dismiss the second and fifth causes of action granted.

LAZER, J. P., MANGANO and O'CONNOR, JJ., concur.

Order of the Supreme Court, Westchester County, dated October 20, 1980, reversed, on the law, without costs or disbursements, and defendants' motions to renew and to

5. Accrual dates in the instant action for the purpose of either the three-year personal injury Statute of Limitations (CPLR 214, subd 5) running from the date of injury, or the four-year breach of warranty Statute of Limitations, running from "tender of delivery" (see Uniform Commercial Code, § 2-725, subd [2]) coincide.

dismiss plaintiffs' second and fifth causes of action are granted.